IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES ROBBINS         :
                        :
                        :
v.                      : Civil No: CCB-01-3096
                        :
                        :
YUTOPIAN ENTERPRISES, INC. :
                        :
                        :

**MEMORANDUM**

Now pending before this court is a motion brought by defendant Yutopian Enterprises, Inc. ("Yutopian") to dismiss the pending case for lack of personal jurisdiction, or alternatively to transfer for improper venue, or alternatively to "transfer for convenience."

This case involves a claim alleging a violation of the Federal Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., as well as a claim alleging violation of state unfair competition law. Yutopian, based in Santa Monica, California, operates an Internet website located at www.yutopian.com through which it provides information and sells products relating to Asian culture. Plaintiff Charles Robbins, a citizen and resident of Pennsylvania, is the assignee of the copyright that Yutopian has allegedly violated. Currently in effect are a Temporary Restraining Order and a Preliminary Injunction that enjoin defendant from conduct that may infringe plaintiff's copyright.[1]

---

[1] Defendant consented to the entry of these Orders.

This court rules that it cannot exercise personal jurisdiction over defendant because minimum contacts with the forum state of Maryland are lacking. In the interests of justice, this case is transferred to the Central District of California.

**BACKGROUND**

This case is about the "Go Database," also known as the "GoBase" created by Peter Danzeglocke. The Go Database is a computer software package that allows users to find information relating to the game of Go. Go "is an ancient board game played on a 19 x 19 grid." (Pl.'s Opp. at 2.) According to Robbins, "avid players spend considerable time practicing and studying historical games played by Go masters and professionals from around the world in order to better their own abilities." (Pl.'s Mot. for Temp. Rest. Order at 2). The Go Database facilitates this study.

Yutopian and Danzeglocke executed an agreement through which Yutopian was granted "the right to duplicate the GoBase software for sale . . . ." (Id. Ex. E.) As royalties, Danzeglocke was to receive 25% of the sales price. (Id.) In the Complaint, Robbins alleges that Yutopian has failed to make the required royalty payments, and has threatened to continue selling the software past the expiration of the agreement on November 12, 2001.

(Compl. at ¶¶ 12, 15-16.)[2]  It is undisputed that Yutopian sold or licensed the Go Database to third parties through www.yutopian.com.

Neither plaintiff nor defendant have put forth statistics on the amount of business Yutopian conducts on its website, however Yutopian admits that it entered into 46 transactions with Maryland residents through the website and a toll-free telephone number during a 10½-month time frame.  (Def.'s Mot. to Dismiss at 5.)  No details about any of these 46 transactions are proffered, although Robbins has submitted the affidavit of a Maryland resident who affirms that he has purchased between $500 and $1,000 of "Go products," including books, each year for the past five years.  (Pl.'s Opp. Ex. 1.)  The affiant also submits that he has regularly received flyers from Yutopian, has been exposed to advertising taken out by Yutopian in the trade journal "American Go Journal," and has received approximately five telephone solicitations from Yutopian.  (Id.)[3]

---

[2] Any sales past the alleged termination date were enjoined by the previous Order of this court.

[3] The same Maryland resident submitted an affidavit on December 17, 2001 stating that he had received a copy of a Yutopian publication containing an advertisement for the Go Database at issue in this case.

3

**Standard of Review**

When a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the burden rests ultimately with the plaintiff to prove, by a preponderance of the evidence, grounds for jurisdiction. See Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993). If the issue is decided without an evidentiary hearing, the plaintiff needs only to make a prima facie showing of personal jurisdiction. See id. at 60; Owens- Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.), 124 F.3d 619, 628 (4th Cir. 1997). In making its determination, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. See Mylan, 2 F.3d at 60.

**ANALYSIS**

"A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993). Because Maryland's long-arm statute confers jurisdiction to the full extent permitted by the Constitution, the long-arm analysis and the constitutional analysis are

typically coextensive. See MD. CODE ANN., Cts. & Jud.Proc § 6-103; Ottenheimer Publishers, Inc. v. Playmore, Inc., 158 F. Supp.2d 649, 652-53 (D. Md. 2001); McGann v. Wilson, 701 A.2d 873, 876 (Md.App 1997). The Maryland long-arm statute, however, limits jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself. MD. CODE ANN., Cts. & Jud.Proc § 6-103(a). Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction." Ottenheimer Publishers, 158 F. Supp.2d at 652; see also Joseph M. Coleman & Assoc. Ltd. v. Colonial Metals, 887 F. Supp. 116, 118-19, n.2 (D. Md. 1995). In this case, Robbins founds jurisdiction on § 6-103(b)(4), which authorizes jurisdiction over persons who

> [cause] tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

MD. CODE ANN., Cts. & Jud.Proc § 6-103(b)(4). In a case such as this, it is the § 6-103(b)(4) inquiry and the constitutional inquiry that are merged into one. See Joseph M. Coleman & Assoc., 887 F. Supp. at 118; Jafarzadeh v. Feisee, 776 A.2d 1, 4 (Md.App. 2001).

Personal jurisdiction may only be exercised by this court within the boundaries outlined by the requirements of due process. Due process "requires that [defendants] have certain

minimum contacts with Maryland 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Atlantech Distrib., Inc. v. Credit General Ins. Co., 30 F. Supp.2d 534, 536 (D. Md. 1998)(quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)).

In this case, Robbins' cause of action has not arisen from defendant's contacts with Maryland sufficient to maintain "'specific jurisdiction' for the claim based on the 'relationship among the defendant, the forum, and the litigation.'" ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997)(quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984). Nonetheless, "'general jurisdiction' may . . . be asserted over a defendant whose activities in the forum state have been 'continuous and systematic.'" ESAB Group, 126 F.3d at 623 (citing Helicopteros Nacionales, 466 U.S. at 414-15, 104 S.Ct. at 1872). The level of contacts required for general jurisdiction is significantly higher than that required to confer specific jurisdiction. Id. at 623-24.

Although Robbins cites to both general and specific jurisdiction cases in his opposition, he has not alleged or proffered evidence regarding any specific transactions with a Maryland resident upon which this court could found jurisdiction.

6

No evidence or allegation has been set forth that the software at issue was involved in any of the 46 transactions cited by Robbins. Neither did Robbins' affiant state that he had purchased or licensed the Go Database from defendant. Moreover, the sub-section of the long-arm statute relied on by Robbins, § 6-103(b)(4), pertains to the exercise of general jurisdiction. See ALS Scan, Inc. v. Wilkins, 142 F. Supp.2d 703, 706 (D. Md. 2001). Therefore, the court treats Robbins' argument as asserting that the exercise of general jurisdiction is appropriate in this case.

To decide whether the exercise of general jurisdiction is proper, the court looks to whether defendant's Maryland contacts are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." International Shoe, 326 U.S. at 318, 55 S.Ct. at 154. As cautioned by the Fourth Circuit, "broad constructions of general jurisdiction should be generally disfavored." Nichols, 991 F.2d at 1200. Furthermore, courts exercising general jurisdiction typically only do so "over nonresidents 'who are essentially domiciled within the forum state.'" Atlantech Distrib., 30 F. Supp.2d at 536 (citation omitted).

Upon review of the circuit authority on general jurisdiction, the court finds that defendant's contacts with

Maryland are insufficient to conclude that Yutopian is "essentially domiciled" in Maryland. See ESAB Group, 126 F.3d at 624 (collecting cases). In Ratliff v. Cooper Labs, Inc., the court found that advertising and the employment of sales personnel in the forum state did not suffice to create general jurisdiction. 444 F.2d 745, 748 (4th Cir. 1971). In Lee v. Walworth Valve Co., the court found that general jurisdiction existed over a defendant who conducted approximately $200,000 worth of sales in the forum state; this ruling, however, was based partially upon the fact that the cause of action arose upon the high seas. 482 F.2d 297, 298-300 (4th Cir. 1973); see also ESAB Group, 126 F.3d at 624. In Nichols, the Fourth Circuit found that general jurisdiction was lacking over a defendant who had conducted between $9 and $13 million worth of sales in the forum state, and who had employed residents as sales representatives and as a district manager. 991 F.2d at 1198. In ESAB Group, the court found that general jurisdiction was lacking where defendant's only contacts with the forum state were that it conducted business through a mail-order catalog with 26 in-state customers that constituted less than 1% of its gross sales, that on one occasion it had purchased between $10,000 and $20,000 worth of supplies in the forum state, and that it had advertised in a trade journal with a nationwide circulation. 126 F.3d at 621.

While Yutopian has admitted to conducting 46 transactions with Maryland residents during the 10½-month period, and Robbins has proffered an affidavit from a Maryland resident who states that he has purchased up to $5,000 worth of products from defendant, these transactions do not constitute sufficiently continuous or systematic contacts upon which the court may found general jurisdiction.  Neither does defendant's advertising in the "American Go Journal" establish contacts sufficient to establish general jurisdiction.  Overall, defendant's contacts with this forum state pale in comparison even to those of defendants in other cases where the Fourth Circuit has found general jurisdiction lacking.  See, e.g., Nichols, 991 F.2d at 1199-1200.

Robbins argues, however, that by virtue of Yutopian's presence on the Internet, it should be subject to jurisdiction in this forum.  (Def.s' Opp. at 7-11.)  Robbins cites to Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), and its progeny, which set forth the proposition that a defendant may be subject to foreign jurisdiction based on activities conducted through a website.  See also ALS Scan, 142 F. Supp. 2d at 708; Atlantech Distrib., 30 F. Supp.2d at 537 (collecting cases that cite Zippo with approval).
Zippo introduced the idea of a spectrum of Internet presence, with more active Internet websites more likely to provide the

foundation for personal jurisdiction. Zippo, 952 F. Supp. at 1124. Active websites provide more opportunities for interaction between the website operator and the Internet user, while passive websites tend to provide only information to the users. Id. Because defendant concedes that it takes orders for products over its website and then ships those products to its customers, www.yutopian.com is properly classified as an active website.

Nonetheless, because Robbins has not alleged a connection between the cause of action in this case and a specific transaction with a Maryland resident, the conclusion that www.yutopian.com is an active website is of limited significance. Forty-six transactions with Maryland residents during a 10½-month period are not enough to establish general jurisdiction over the defendant, no matter what medium was used to conduct the transactions. Nor is the fact that a website operated from a foreign jurisdiction is available for access by residents of the forum state, and contains advertising for the defendant's goods or services, sufficient to subject the operator to the general jurisdiction of the forum's courts. See ALS Scan, 142 F. Supp.2d at 709; Atlantech Distrib., 30 F. Supp.2d at 537; see also Ratliff, 444 F.2d at 748 (advertising in publication with nationwide distribution not sufficient to sustain general jurisdiction in forum state). To rule here that a mere presence on the Internet, regardless of the nature and extent of the

transactions conducted thereon, is sufficient in itself to subject defendant to the general jurisdiction of the Maryland courts "would mean that it would presumably be subject to general personal jurisdiction in every jurisdiction in the country, thereby allowing a plaintiff to sue it for any matter anywhere in the nation. This the constitution does not permit." Atlantech Distrib., 30 F. Supp.2d at 537.[4]

In his opposition, Robbins requested that limited discovery on the issue of jurisdiction be permitted in the event that Yutopian's motion is persuasive. (Pl.'s Opp. at 5 n.10.) This request will be denied on the ground that Robbins has failed to even allege facts that would support the exercise of either specific or general jurisdiction in this case. In other words, Robbins has not alleged that its cause of action arises out of a particular transaction with a Maryland resident, or shown that the scope of Yutopian's transactions with Maryland residents are sufficient to justify the exercise of general jurisdiction.[5]

---

[4] I recognize that Atlantech involved a passive website. The analysis quoted, however, is also applicable to an active website with the limited number and type of transactions involved in the present case.

[5] Robbins does argue that because the 10½-month period during which the 46 transactions occurred did not include the holiday shopping season, "[p]resumably, Yutopian's sales, much like other retail entities, increase during the holiday season." (Pl.'s Opp. at 11.) Assuming this is true, it is highly unlikely that an increase in sales during the holiday season would approach the level of continuous and systematic contacts required to justify the exercise of general jurisdiction over Yutopian.

Considering also the extra burden and briefing that would result from further discovery, Robbins' request is denied.

Having determined that this court cannot exercise personal jurisdiction over Yutopian, it remains to be decided whether to dismiss the case or transfer it to another district court pursuant to 28 U.S.C. § 1406(a).  See <u>Doering v. Copper Mountain, Inc.</u>, 259 F.3d 1202, 1209 n.3 (10th Cir. 2001); <u>Porter v. Groat</u>, 840 F.2d 255, 257-58 (4th Cir. 1988).  It is within the sound discretion of the district court to transfer a case under § 1406 if doing so is in the interests of justice.  Upon consideration of the present record, the court determines that it is in the interests of justice for this case to be transferred to the United States District Court for the Central District of California.  Transfer rather than dismissal is appropriate in this case, <u>inter alia</u>, to avoid any procedural complications that may be wrought by dismissal of the case, and to preserve the injunctive order already in place.  On the current record, the Central District of California is the only district in which the court is confident that jurisdiction may be had over Yutopian.

A separate Order follows.

_May 14, 2002_
Date

_Catherine C. Blake_
Catherine C. Blake
United States District Judge